LILBURN M. HESS, PLAINTIFF AND DEFENDANT IN ERROR, v. JACOB RIECH AND FREDERICK ROEDEL, DEFENDANTS AND PLAINTIFFS IN ERROR.

Argued November 17, 1909—Decided February 28, 1910.

Hess, the plaintiff, sold to the defendants, Riech and Roedel, all the shares of stock of a brickmaking company, receiving for such shares $1,500 in cash, two notes of the defendants, a $1,000 mortgage of one of the defendants, and, by direction of the new board of directors elected by the purchasing stockholders of the brick manufacturing company, a $2,500 mortgage made to Hess by the corporation, and a contract by the corporation to furnish Hess with $2,500 worth of brick. The brick company failed to furnish the brick, and Hess brought an action against the company for the breach of its contract, and obtained a judgment. Thereafter he caused the judgment to be canceled, and the corporate mortgage to be canceled, and brought an action against the defendants for the alleged unpaid price of the shares sold to them. *Held*, that the plaintiff had received from the defendants all that he had bargained for in a transaction free from fraud; that he had not rescinded it, and that no right of action existed against the defendants.

On error to the Supreme Court.

For the plaintiffs in error, *Louis H. Miller.*

For the defendant in error, *Walter H. Bacon.*

The opinion of the court was delivered by

REED, J. This writ of error brings up a judgment entered upon a finding by a trial judge—a jury being waived—in favor of the plaintiff below and defendant in error.

The facts developed upon the trial were in substance the following: Lilburn M. Hess, the plaintiff below, was the owner of ninety-eight shares of the capital stock of a corporation known as the Millville Brick Manufacturing Company. The company was conducting the business of brick making at Millville, New Jersey. The wife and the brother of Hess each owned one share of the one hundred shares of stock outstanding.

On May 5th, 1905, Hess sold his stock to one of the defendants, Jacob Riech. One-half of these shares was afterward transferred to the other defendant, Roedel. The two shares of stock held by the wife and the brother of Mr. Hess were transferred to one Rosina Riech and the other to Alice C. Roedel. The consideration for the sale of all this stock was stated in money value at $12,000, but a mortgage for $4,000, then upon the plant, the shares of which were so sold, was deducted from the $12,000, so that the amount to be paid in cash or property was $8,000.

This consideration was to be paid as follows: $1,500 in cash, by two notes for $250 each, signed by the two defendants, Riech and Roedel, by a $1,000 mortgage made by and secured upon the property of Riech, by a $2,500 mortgage made by the Millville Brick Manufacturing Company upon its plant, and by a contract by the brick company to manufacture and furnish $2,500 worth of brick, one-half to be manufactured and furnished between May 5th, 1905, and January 1st, 1906, and the other half between May 1st, 1906, and January 1st, 1907.

It appears that on the 5th day of May, 1905, a meeting of

the stockholders, and afterward a meeting of the directors of the Millville Brick Manufacturing Company, of whom Mr. Hess was one, was held, and a resolution was adopted at each meeting to sell the brick plant and the business of the company for $12,000, and to transfer the stock held in said company. It appears that afterwards, on the same day, another meeting was held by the new holders of the stock transferred or to be transferred from Hess, his wife and his brother to the defendants and their wives; and these new stockholders ordered the transfer of the stock to be entered on the books of the company, elected themselves directors and authorized the new directors to acquire all the property sold by the Millville Brick Manufacturing Company, and the new directors passed a resolution in conformity with this authority. The form of these resolutions indicate that the parties treated the transfer of the shares as a transfer of the plant itself.

The newly-officered corporation, on the same day, executed a mortgage to Hess for $2,500, and thereafter executed a contract to furnish $2,500 worth of brick.

Riech and Roedel signed two notes for $250 each, and Riech executed a mortgage lien upon his property for $1,000. The cash portion of the consideration was paid. Some time subsequently the $1,000 secured by the Riech mortgage to Hess was paid. So also was one of the $250 notes made by Riech and Roedel, as well as a portion of the other note.

Soon after the execution of these papers, it seems that the buildings of the brick plant were burned. The company failed to furnish the brick which it contracted to deliver during the season of 1905, and in January, 1906, Mr. Hess began an action against the Millville Brick Manufacturing Company to recover damages for this breach of its contract, and obtained a judgment against the company. The record of this suit shows that this judgment was canceled of record by the attorney of the plaintiff. The present action was begun in February, 1907.

The declaration demands the purchase price of the ninety-

eight shares of capital stock of the Millville Brick Manufacturing Company at $120 per share.

The trial resulted in a judgment against Riech and Roedel for $5,917.70 and costs, this amount being obviously almost entirely made up of that part of the consideration to be paid for the ninety-eight shares in the shape of the corporate mortgage and the brick furnishing contract.

The theory upon which the decision was rested seems to have been that the corporation was without authority to make the $2,500 mortgage and the contract to furnish brick in payment of the shares of stock transferred by the old stockholders to the new stockholders; that, therefore, these instruments were to be regarded as null, and so as to the portion of the consideration represented by them, there had been no payment at all.

In this condition of affairs, it was assumed that the original consideration *pro tanto* remained unpaid, and so was made the subject of the present action against the defendants for its recovery.

This view of the situation is clearly erroneous. It was not disputed that Mr. Hess received for his shares that which he had bargained for. He was to get the two notes, the two mortgages, and the brick contract, and he received them. The $2,500 mortgage and the brick contract were to be executed by the corporation, and they were so executed. In their execution Hess himself took part by assisting in the transfer of the corporate power from the old to the new stockholders, and from the old to the new board of directors for the very purpose of accomplishing the transaction, the object of which was the execution of these contracts. When they were executed and delivered without fraud—for no fraud is alleged—Hess had received the consideration for his shares; and that consideration consisted in part in the corporate mortgage and in the corporate brick contract.

Had the right to rescind in equity existed by reason of a mistake respecting the power of the new board of directors to execute a corporate contract, this right was not exerted. Indeed, long after Hess sued the corporation upon the corpo-

rate contract for the delivery of the brick and recovered judgment, which judgment appears to have been canceled of record in his behalf. In that action, so far as appears, no defence was set up by the corporation that the execution of the brick contract was an *ultra vires* act, and was not set up probably because all the stockholders and directors joined in its execution, and the rights of no creditors appeared involved.

Indeed, the change of attitude of the plaintiff respecting these contracts seems to have resulted not so much from the want of authority to execute them as the unfortunate history of the corporation, which diminished its ability to perform the contracts.

Without running into a discussion concerning these collateral matters, it is sufficient to say that the plaintiff's rights, after the conclusion of the transaction, and the reception of these corporate contracts in accordance with the terms of his original contract with the defendants, rested entirely upon the contracts which he had received.

The action against these two defendants was misconceived, and the plaintiff should have been nonsuited.

The judgment is reversed, and a *venire de novo* ordered.

*For affirmance*—None.

*For reversal*—THE CHIEF JUSTICE, GARRISON, SWAYZE, REED, TRENCHARD, PARKER, BERGEN, VOORHEES, MINTURN, BOGERT, VREDENBURGH, VROOM, GRAY, DILL, CONGDON, JJ. 15.